# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**JACKIE DELMAS MASON,**

      **Plaintiff,**

  v.                          **Case No. 19-CV-992**

**JEFFERY MANLOVE, NATHAN TAPIO,
SALAM SYED, NANCY GARCIA, and
MARY MOORE,**

      **Defendants.**

---

## DECISION AND ORDER

---

Plaintiff Jackie Delmas Mason, who is representing himself and confined at Waupun Correctional Institution, brings this lawsuit under 42 U.S.C. § 1983. Mason was allowed to proceed on a claim under the Eighth Amendment for deliberate indifference to medical needs against defendants Dr. Jeffery Manlove, APNP Nathan Tapio, Dr. Salam Syed, APNP Nancy Garcia, and APNP Mary Moore for prescribing him acetaminophen, meloxicam, and salsalate despite Mason's Hepatitis C diagnosis.

The defendants moved for summary judgment on the merits. (ECF No. 72.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 7, 36.)

### FACTS

At all times relevant hereto plaintiff Jackie Delmas Mason was an inmate at Waupun Correctional Institution. (ECF No. 79, ¶ 1.) In March 2013, prior to his incarceration at Waupun, Mason tested positive for Hepatitis C. (*Id.*, ¶ 7.) Hepatitis C

is a viral infection that is associated with liver inflammation. (*Id.*) Mason has also suffered from chronic renal (kidney) disease since at least 2008. (*Id.*, ¶ 9.) Additionally, he experiences chronic lower back pain and has struggled with it since before he was incarcerated at Waupun in 2013. (*Id.*, ¶ 12.)

To treat his lower back pain, at various times since 2013 the defendants prescribed Mason meloxicam, salsalate, and acetaminophen. Meloxicam's prescribing instructions indicate that it is safe for patients with mild-to-moderate liver disease, and they can take the full recommended dose. (ECF No. 79, ¶ 17.) For patients with severe liver disease, the prescribing instructions recommend to "use with caution" but do not recommend a lower dose. (*Id.*) Also, Mason's liver specialists at the University of Wisconsin Hepatology department included in their reports in 2016 and 2017 that meloxicam was one of the medications Mason could take. (*Id.*, ¶ 24.) No evidence in the record suggests that meloxicam should not be prescribed to people with liver disease.

From July 2013 to September 2016 and again from February 2017 to October 2017 Mason had been prescribed 7.5 mg of meloxicam twice daily. (ECF No. 79, ¶¶ 19-20.) Mason was instructed to take it as needed for his back pain. (*Id*, ¶ 20.) Dr. Manlove, Tapio, and Garcia all prescribed Mason meloxicam at some point during this period. (*Id.*, ¶ 21.) Mason's laboratory tests from February 2017 through August 2020 showed an increase in his creatinine level, which indicates an increase of waste product in his blood stream and may be a sign of kidney disease. (ECF No. 79, ¶¶ 9, 23; ECF No. 76-1 at 92-93, 96-97, 99, 326, 406.) In October 2017, at the beginning of

this upward trend, Tapio discontinued Mason's meloxicam prescription. (ECF No. 79, ¶ 23.)

From April 30, 2020, to January 22, 2021, Moore prescribed Mason a relatively low dose of salsalate, 750 mg, to be taken twice daily. (ECF No. 79, ¶ 25.) A typical dose of salsalate is 3,000 mg/day. (*Id.*, ¶ 26.) In January 2021 Mason decided to stop taking salsalate and the prescription was discontinued. (*Id.*)

In November 2015 Garcia prescribed Mason a dose of 2 g per day of acetaminophen with a limitation of 48 pills per month. (ECF No. 79, ¶ 32.) The standard dosage for acetaminophen is 3 g per day. (*Id.*) While patients with liver disease should be monitored while taking acetaminophen, prescribing guidelines state that it still may be taken by patients with liver disease. (*Id.*, ¶ 27.) A patient who takes excessive amounts of acetaminophen over prolonged periods of time risks liver damage. (*Id.*, ¶ 28.) And according to the National Kidney Foundation, acetaminophen is the preferred over-the-counter drug for pain management for a person with kidney disease. (*Id.*, ¶ 30.)

For reasons not stated in the record, Mason discontinued taking acetaminophen in January 2016. (ECF No. 79, ¶ 33.) On November 2, 2016, Dr. Syed prescribed Mason acetaminophen with codeine. (*Id.*, ¶ 34.) On March 3, 2017, Dr. Manlove also prescribed Mason acetaminophen with codeine. (*Id.*) On June 2, 2017, Tapio prescribed regular acetaminophen, and Mason filled that prescription in June 2017, November 2017, and January 2018. (*Id.*, ¶ 35.)

Mason was to take all three medications on an "as needed" basis for his back pain. (ECF No. 79, ¶ 36.) According to the defendants, all prescriptions were in accordance with "the community health care standards, the Wisconsin Department of Corrections' Chronic Pain Guidelines, as well as national guidelines." (*Id.*, ¶ 37.) The defendants also state that Mason's medical records indicate that his liver and kidney functions have been consistently monitored every six months via laboratory testing. (*Id.*, ¶¶ 8, 22; ECF No. 76-1 at 6.) The defendants further note that Mason was given other options besides these medications to treat his chronic back pain, including a consultation with a pain management specialist, steroid injections, physical therapy, use of a TENS unit, and Gabapentin. (*Id.*, ¶ 15.) Mason's medical records show that he took advantage of these options. (ECF No. 76-1, at 65-69, 77-83, 147-156, 377-386, 394-399, 435-436.)

Although Mason asserts that his liver and kidney functions were not monitored every six months, he provides no evidence other than his statement to that effect, which contradicts his medical records. (ECF No. 80, ¶ 33.) Mason also states that, while he received a steroid injection and was able to use the TENS unit once, he did not receive physical therapy or Gabapentin. (*Id.*, ¶¶ 17-20.)

Mason suffered from abdominal and liver pain from 2014 through 2018, and states the pain stopped once he stopped taking acetaminophen, meloxicam, and salsalate. (ECF No. 80, ¶ 31.) Mason informed Moore that he had pain in his kidneys and abdomen. (*Id.*, ¶ 5.) Mason also suffered from "mental confusion or mental fogginess," which went away in October 2017 after he stopped taking the meloxicam.

4

(*Id.*, ¶ 7.) When Mason started taking the salsalate on April 30, 2020, the pain in his abdomen returned. (*Id.*, ¶ 8.) This led him to conclude that he cannot tolerate these medications, a conclusion he believes the defendants also should have reached. (*Id.*, ¶ 9; ECF No. 79 at 14.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for

5

trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Mason claims that the defendants violated his Eighth Amendment rights because they persisted in prescribing him meloxicam, salsalate, and acetaminophen despite the fact that he could not tolerate these medications due to his Hepatitis C and kidney disease. The Eighth Amendment "protects prisoners from prison officials from conditions that cause 'the wanton and unnecessary infliction of pain' including . . . grossly inadequate medical care.'" *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2015) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Courts "use a two-part test to determine if medical care amounted to cruel and unusual punishment . . . 'whether the plaintiff suffered from an objectively serious medical condition' and 'whether the individual defendant was deliberately indifferent to that condition.'" *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Petties v. Carter*, 836 F.3d 722, 727-728 (7th Cir. 2016).

The parties do not dispute that Mason's chronic back pain, his Hepatitis C, and his kidney disease amounted to a serious medical condition. The only issue is whether the defendants were deliberately indifferent to Mason's Hepatitis C and kidney disease when they prescribed him meloxicam, salsalate, and acetaminophen to address his back pain. "To show deliberate indifference, 'a plaintiff must provide evidence that

6

an official *actually* knew of and disregarded a substantial risk of harm.'" *Id.* (quoting *Petties*, 836 F.3d at 728.) (emphasis in original). That requires showing the official had "'a subjective state of mind' somewhere between negligence and intention.'" *Id.* The plaintiff "must show more than mere evidence of malpractice." Id. The plaintiff must show that the prison official's choices "were so 'significant a departure from accepted professional standards or practices' that it is questionable whether they actually exercised professional judgment." *Stallings v. Liping Zhang*, 607 Fed. Appx. 591, 593 (7th Cir. 2015) (quoting *Pyles*, 771 F.3d at 409).

Mason has not demonstrated that the defendants' actions significantly departed from accepted professional standards. He asserts that, because it was obvious he could not tolerate the medications, the defendants should not have prescribed them. However, he does not establish that the defendants knew he could not tolerate the medications. He says he told Moore about the fact that he was experiencing abdomen and kidney pain, but he does not state when he told her, what specifically he told her, and what, if anything, she did to address that pain. There is no other evidence in the record that any of the other defendants were ever aware that Mason was experiencing pain or fogginess while taking meloxicam, salsalate, or acetaminophen. All Mason presents is an inference that he drew when he realized that his fogginess abated, and his abdomen and kidney pain ceased when he stopped taking the medications. He argues that the defendants also should have drawn that same inference. But that does not establish that any of the defendants were deliberately indifferent to his condition. *See Petties*, 836 F.3d at 728. ("Even objective recklessness—failing to act in the face of

7

an unjustifiably high risk that is so obvious that it *should* be known—is insufficient to make out a claim.") (emphasis in original).

And that assumes that Mason's fogginess and abdomen and kidney pain were an unjustifiably high risk of taking the subject medications, something Mason has failed to prove. The only detail he provides about his pain and fogginess is that they lasted while he was taking the medications. He does not provide evidence that either his Hepatitis C or his kidney disease worsened as a result of the medication. Mason's pain and fogginess do not create a question of material fact as to whether the subject medications presented a substantial risk to his health. "Summary  judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). "It is therefore incumbent on the party opposing a summary judgment motion to 'inform the district court of the reasons why summary judgment should not be entered'" *Reed v. Brex, Inc.*, 8 F. 4th. 569, 578 (7th Cir. 2021) (quoting *Riely v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018)). No reasonable jury could conclude that any pain or fogginess Mason experienced were indications that the medication he was taking created a substantial risk to his health.

Mason simply disagrees with the defendants' decision to prescribe him meloxicam, salsalate, and acetaminophen. But that is not enough to state a constitutional claim. "A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is

8

'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (citations omitted). Mason fails to dispute the defendants' assertions that prescribing meloxicam, salsalate, and acetaminophen was appropriate and medically acceptable for treating his back pain. The defendants established that the DOC guidelines, the national guidelines, and the prescribing instructions all show that the medications are safe to prescribe to a patient with Hepatitis C, liver disease, and kidney disease as long as the patient is being monitored. Although Mason disputes that he was monitored, his medical records directly contradict this assertion. The records further show that the defendants were thoughtful about the dosages they prescribed and stopped prescribing meloxicam when Mason's creatinine levels spiked.

Mason also was not required to take these medications and could elect to stop taking them at any time. Furthermore, he could have chosen to try something else if the side-effects were too much. Indeed, Mason's medical records show he had other pain management options available to him and that he took advantage of some of these options. Additionally, Mason does not demonstrate that his Hepatitis C, liver disease and kidney disease worsened or were aggravated as a result of taking these medications.

As such, no reasonable jury could conclude that the defendants' actions were blatantly inappropriate. Summary judgment is granted in the defendants' favor.

## CONCLUSION

9

For the foregoing reasons, the defendants' motion for summary judgment is granted. The defendants also argued they were entitled to qualified immunity. Because the court grants summary judgment on the merits, it does not need to address the qualified immunity argument. The case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 72) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time,

10

generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 19th day of July, 2022.

BY THE COURT

WILLIAM E. DUFFIN
United States Magistrate Judge

11